# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOLANDA ATKINSON, | Case No. 1:23-cv-01401-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| MARTIN O'MALLEY, Commissioner of Social Security,[1] | |
| Defendant. | (Doc. 1) |

## I.   INTRODUCTION

Plaintiff Yolanda Atkinson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.   FACTUAL BACKGROUND

On November 27, 2019, Plaintiff protectively filed a claim for DIB payments, alleging she

---

[1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 10.)

became disabled on September 19, 2017, due to depression, anxiety, sleep apnea, and thyroid issues. (Administrative Record ("AR") 19, 72, 73, 89, 90, 114, 121, 329, 330.)

Plaintiff was born on April 22, 1956, and was 61 years old on the alleged disability onset date. (AR 33, 72, 89.) She has a limited education, and previously worked in a cheese processing plant. (AR 33, 53, 306, 307, 331.)

**A.    Relevant Evidence of Record[3]**

In November 2017, Plaintiff complained that she is "feeling overwhelmed and crying multiple times throughout the day." (AR 531.) She reported taking Lorazepam, but that she had not returned to counseling. (AR 531.) Plaintiff was assessed with post-traumatic stress disorder (PTSD), generalized anxiety disorder, major depression, social anxiety disorder, and grief. (AR 531–32.) It was noted Plaintiff's symptoms had been "exacerbated by recent loss of her sister, caring for her mother and both of them finding breast lumps needing further evaluation." (AR 531.)

From January to March 2018, Plaintiff attended outpatient counseling with Roger Allen Watson, LMFT. (AR 566.) She described symptoms of helplessness, panic attacks, and anger. (AR 566.)

Plaintiff presented for a follow up appointment for thyroid issues in March 2018. (AR 515–17.) It was noted that Plaintiff "does a lot of crying throughout the session" with LMFT Watson and "still has anxiety." (AR 515.) Her mental status examination showed tearful affect, but was otherwise normal, and it was noted that her generalized anxiety disorder was "stable" and "controlled with current medications." (AR 515.)

That same month, LMFT Watson completed a "Short-Form Evaluation for Mental Disorders." (AR 562–65.) LMFT Watson indicated he had been seeing Plaintiff two to three times per month since June 2016. (AR 562.) Upon examination, Plaintiff was crying and agitated, with pressured speech, moderately impaired concentration, and impaired remote memory. (AR 562.) Her mood was anxious and depressed, with blunted affect and mildly impaired judgment. (AR 563.) LMFT Watson opined that Plaintiff's ability to understand, remember, and carry out complex

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

2

instructions; maintain concentration, attention and persistence; perform activities within a schedule and maintain regular attendance; and respond appropriately to changes in a work setting were "impaired." (AR 564.) LMFT Watson further found that Plaintiff cannot complete a normal workday and workweek without interruptions from psychologically based symptoms or interact appropriately with the public, supervisors, and coworkers. (AR 564.)

In September 2018, LMFT Watson completed another "Short-Form Evaluation for Mental Disorders." (AR 617–20.) Upon examination, Plaintiff had pressured speech, poor impulse control, and moderately impaired concentration. (AR 617.) Her mood was depressed, with labile affect and moderately impaired judgment. (AR 618.) LMFT Watson opined that Plaintiff's ability to understand, remember, and carry out simple instructions; perform activities within a schedule and maintain regular attendance; and respond appropriately to changes in a work setting were "impaired." (AR 619.) LMFT Watson further found that Plaintiff cannot maintain concentration, attention and persistence; complete a normal workday and workweek without interruptions from psychologically based symptoms; or interact appropriately with the public, supervisors, and coworkers. (AR 619.) He wrote in a letter that same month:

> With the physical limitations this patient reports, and all the added environmental stresses, I do not believe this Patient is capable of operating at a job that requires focused concentration, social interaction, and adaptation to unexpected emergencies. This Patient's physical and emotional stressors are chronic in nature and restrict her employment capabilities.

(AR 623.) Plaintiff continued to see LMFT Watson through November 2018, when her insurance was terminated. (AR 417–18, 666–67.)

Plaintiff resumed treatment with LMFT Watson and underwent an initial assessment in August 2020. (AR 815–16.) She was assessed with major depressive disorder, recurrent, moderate with anxious distress. (AR 816.) She continued outpatient counseling through January 2022. (AR 817–21.)

Plaintiff presented for a consultative examination with Charles DeBattista, M.D., an independent psychological consultant, in November 2020. (AR 721–26.) She reported worsening anxiety and depression due to grief about her sister's passing and additional physical issues. (AR 721.) Dr. DeBattista noted her symptoms included depressed mood, anhedonia, fatigue, frequent

3

crying spells, feelings of worthlessness, poor memory and concentration, and recurrent anxiety attacks. (AR 721.) Plaintiff denied suicidal thoughts or feelings of hopelessness. (AR 721.) Regarding her treatment history, she saw a counselor every two weeks and treated with psychotropic medications, but had never been hospitalized for psychiatric reasons. (AR 721.)

Upon examination, Dr. DeBattista found Plaintiff had good hygiene, good eye contact, and normal speech. (AR 722.) She appeared sad and tearful, her mood was depressed and her affect constricted. (AR 722.) Plaintiff's thought process was linear and goal directed, she was alert and oriented, she had no hallucinations or delusions, and her insight and judgment were intact. (AR 722.) Her had the ability to recall 2/3 objects after 5 minutes and the ability to perform serial 3s with one error and spell "WORLD" backwards correctly. (AR 722.) Dr. DeBattista diagnosed Plaintiff with major depressive disorder, moderate and panic disorder with agoraphobia, and rated her prognosis as fair. (AR 722.) Based on his examination, Dr. DeBattista opined that Plaintiff had mild limitations understanding, remembering, and carrying out detailed and complex instructions; moderate to marked limitations interacting with supervisors, coworkers, and the public; mild limitations maintaining attention and concentration; and moderate limitations associated with day-to-day work activity, maintaining regular attendance, and performing work activities on a consistent basis. (AR 723, 724.) Dr. DeBattista also opined that Plaintiff's ability to "work a full day or week" was "not impaired." (AR 723.)

In July 2021, Plaintiff continued to complain of anxiety due to caring for her elderly mother. (AR 864–66.) Upon examination, she was alert and interactive with normal effect. (AR 866.) It was noted that her depression was stable, and her medication was increased to account for "additional caregiver stress and trouble sleeping." (AR 867.)

In November 2021, LMFT Watson noted that Plaintiff "presents as helpless to change her circumstances" and "wants others to make a difference in her life quality." (AR 821.) She expressed anger at her husband, whom she thinks is depressed, isolated, and "has no drive to improve their life together." (AR 821.) She stopped attending counseling in January 2022, after her insurance authorization had been cancelled. (AR 821.)

Plaintiff presented for a telehealth appointment in March 2022 to follow up from a referral

4

to an ear, nose, and throat specialist. (AR 824–28.) It was noted that she was "doing well" on medication and that her depression and anxiety symptoms had improved. (AR 825.) She denied having any crying spells in the prior two weeks and there was no change in her social stressors. (AR 825.) She reported to be able to control worrying. (AR 825.) Upon examination, Plaintiff's affect was appropriate and she maintained good eye contact. (AR 827.) Her major depression and generalized anxiety disorder were noted to be controlled with current medications and lifestyle modifications. (AR 827.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on February 24, 2020, and again on reconsideration on June 9, 2020. (AR 19, 114–19, 121–26.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 127–60.) At the hearing on May 26, 2022, Plaintiff appeared with counsel by telephone and testified before an ALJ as to her alleged disabling conditions. (AR 49–65.) A Vocational Expert ("VE") also testified at the hearing. (AR 65–71.)

**C.    The ALJ's Decision**

In a decision dated June 28, 2022, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 19–35.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 22–35.) The ALJ decided that Plaintiff met the insured status requirements of the Act through June 30, 2022, and she had not engaged in substantial gainful activity since September 19, 2017, the alleged onset date (step one). (AR 22.) At step two, the ALJ found Plaintiff's following impairments to be severe: hypothyroidism, status post thyroidectomy; diabetes mellitus with peripheral neuropathy; obesity; major depressive disorder; and generalized anxiety disorder. (AR 22–24.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 24–26.)

The ALJ assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P

at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform medium work as defined in 20 CFR [§] 404.1567(c) except [Plaintiff] can lift and carry, push and pull 50 pounds occasionally and 25 pounds frequently; can frequently stoop, balance, kneel, crawl, crouch, and climb ramps, stairs, ladders, ropes, or scaffolds. She can understand, remember, and carry out simple tasks but not at an assembly line rate; can make simple work-related decisions; can have occasional work-related interactions with co-workers, supervisors, and the general public; and can have occasional changes in the work setting.

(AR 26–33.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 27.)

The ALJ determined that Plaintiff could not perform her past relevant work (step four) but that, given her RFC, she could perform a significant number of jobs in the national economy (step five). (AR 33–35.) In making this determination, the ALJ posed a series of hypothetical questions to the VE. (AR 66–68.) In response, the VE testified that a person with the RFC specified above could perform the jobs of linen supply room worker and store laborer. (AR 67.) The ALJ ultimately concluded Plaintiff was not disabled from September 19, 2017, through the date of the decision. (AR 35.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on March 28, 2023. (AR 5–10.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

---

(S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

6

### III. LEGAL STANDARD

**A.  Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial

gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.  Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted).  "Substantial evidence . . . is 'more than a mere scintilla,' " and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, (1938)).  *See also Ford v. Saul*, 930 F.3d 1141, 1153–54 (9th Cir. 2020).  "This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'"  *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'"

*Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends that the ALJ erred in their consideration of the persuasiveness of the medical opinion of Dr. DeBattista because their analysis did not take into account the record as a whole. (Doc. 15 at 10–15.) The Court agrees with Plaintiff.

**A.    Legal Standard**

Plaintiff's claim for DIB is governed by the agency's revised regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. § 404.1520c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. § 404.1520c(a)–(b).

Recently, the Ninth Circuit issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*.

at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)). *See also id*. § 416.920c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). *See also id*. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). *See also id*. § 416.920c(c)(2).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id*. § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors.

*Woods*, 32 F.4th at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id*. (quoting § 404.1520c(b)(3)). *See also id*. § 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id*.

"Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. The agency must "articulate . . . how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id*. § 404.1520c(b)(2). *Id*. Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the

10

discussions required by 20 C.F.R. § 404.1520c.  *See* 20 C.F.R. § 404.1520b(c)(3).

With these legal standards in mind, the Court reviews the weight given to Dr. DeBattista's opinion.

**B.     Analysis**

The ALJ found Dr. DeBattista's opinion "particularly persuasive," reasoning that it was

> somewhat supported by his own examination findings, including the claimant's depressed mood and constricted affect.  However, Dr. DeBattista's opinion is internally inconsistent and he did not explain these internal conflicts.  For example, Dr. DeBattista reported [Plaintiff] has moderate limitations maintaining regular attendance, but a few lines later he wrote that the claimant's ability to work a full day or week was not impaired.  Dr. DeBattista apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff], rather than his own findings upon examination and his clinical experience.  Furthermore, Dr. DeBattista's opinion is not consistent with [Plaintiff's] most recent primary care records, which show she has some ongoing anxiety which is improved with medication, and her depression is stable and well controlled.  Therefore, I find the opinion of Dr. DeBattista to be only partially persuasive.

(AR 32.)

An ALJ may not cherry-pick evidence in evaluating a medical opinion.  *Buethe v. Comm'r of Soc. Sec.*, No. 2:20-cv-552-KJN, 2021 WL 1966202, at *4 (E.D. Cal. May 17, 2021) (collecting cases); *see Cruz v. Kijakazi*, No. 1:21-cv-01248-AWI-HBK, 2023 WL 1447855, at *5 (E.D. Cal. Feb. 1, 2023) ("Even under the new regulations, the ALJ may not 'cherry-pick' evidence in discounting a medical opinion.").  For example, Plaintiff's "most recent primary care records," the sole medical evidence on which the ALJ relies in evaluating the persuasiveness of Dr. DeBattista's opinion, document a single telehealth visit to treat a physical, not mental, ailment. (*See* AR 32 (citing AR 824–27 (follow up from referral to ear, nose, and throat specialist).)  However, the evidence of Plaintiff's treatment for her mental impairments by LMFT Watson, which spans over six years, was largely overlooked by the ALJ.  This evidence is consistent with Dr. DeBattista's opinion, in that it documents symptoms of helplessness, panic attacks, self-isolation, dependence on others, obsessive thoughts, anger, and low self-worth. (*See* AR 417–18, 566, 666–67, 817–21.)  In addition, and most importantly, the ALJ wholly ignored the multiple medical opinions of LMFT Watson, which is contrary to law.  *Woods*, 32 F.4th at 792 ("The agency must 'articulate . . . how persuasive' it finds

11

'all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id*. § 404.1520c(b)(2)). Like Dr. DeBattista, LMFT Watson opined that Plaintiff was significantly limited in her ability to perform activities within a schedule and maintain regular attendance, complete a normal workday and workweek, and interact appropriately with the public, supervisors, and coworkers. (*See* AR 564, 619, 623.) An independent review of the record therefore reflects that, contrary to the ALJ's conclusion, Dr. DeBattista's opinion is consistent with evidence in the medical record.

The Court is aware of the general proposition that ALJ's are to resolve ambiguities and conflicts in the record. *Ford*, 950 F.3d at 1154. It is also mindful of the deference desired by the agency in promulgating these revised regulations. *See* REVISIONS TO RULES, 82 Fed. Reg. 5844-01 at *5860 ("[The new regulations are] essential for [the agency's] administration of a massive and complex nationwide disability program where the need for efficiency is self-evident."). However, the text of the regulations explicitly requires an explanation of how the ALJ considered the supportability and consistency of an opinion. 20 C.F.R. § 404.1520c(b)(2). Harmonizing this requirement with current Ninth Circuit law prohibiting cherry-picking and requiring a detailed and thorough summary of conflicting evidence, and an interpretation and findings thereon, the ALJ must explicitly address evidence that supports and is consistent with a less-than-persuasive medical opinions, and should this evidence fail to persuade, the ALJ must provide legally sufficient reasons. *See Buethe*, 2021 WL 1966202, at *7; *Jones v. Saul*, No. 2:19-CV-01273 AC, 2021 WL 620475, at *8 (E.D. Cal. Feb. 17, 2021) (the ALJ cannot "forego articulation of their reason or reasons altogether"); *see also Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("[T]he ALJ must provide sufficient reasoning that allows [for] review."). This the ALJ did not do.[5]

---

[5] The error is not harmless. Errors are harmless when a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Social Sec. Admin*., 454 F.3d 1050, 1056 (9th Cir. 2006). Here, the VE testified that the addition to Plaintiff's RFC of limitations of no interaction with coworkers or supervisors or absenteeism of three days per month, as opined by both Dr. DeBattista and LMFT Watson, would preclude all work. (AR 68–69.) The Court therefore cannot "confidently conclude" that "no reasonable ALJ," after considering LMFT Watson's opinion, could have reached a different disability determination. *See Marsh*, 792 F.3d at 1173 (ALJ's failure to consider treating doctor's medical opinion, which described the plaintiff as "pretty much nonfunctional," was not harmless).

As to the ultimate outcome of Plaintiff's claim, the Court expresses no opinion as to the level of persuasiveness that should be ascribed to Dr. DeBattista's opinion. Nor does the Court express what Plaintiff's RFC ultimately should be. These are for the ALJ to decide. *Ford*, 950 F.3d at 1154. However, because the ALJ cherry-picked facts and ignored probative evidence, including medical opinion evidence, "the proper remedy is remand, where the ALJ may either (a) reaffirm [their] decision after a more thorough explanation of why these opinions were unsupported by and inconsistent with the relevant evidence, or (b) award benefits."[6] *Buethe*, 2021 WL 1966202, at *7.

## V. CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Yolanda Atkinson against Defendant Martin O'Malley, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **May 13, 2024**                                    /s/ *Sheila K. Oberto*
                                                             UNITED STATES MAGISTRATE JUDGE

---

[6] Plaintiff concedes that remand for further proceedings, as opposed to remand for the payment of benefits, is the proper remedy in this case. (*See* Doc. 15 at 15.)

13